IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVANGELICAL BENEFIT TRUST, BRANDSOURCE BENEFIT TRUST, CALPASC GROUP BENEFIT TRUST, TRUST FOR CMTA, THE CUSTOM RAIL EMPLOYER WELFARE TRUST FUND, IDA GROUP BENEFIT TRUST, IEC GROUP BENEFIT TRUST, MIDAS DEALERS EMPLOYEE BENEFIT TRUST, N3A GROUP BENEFIT TRUST and PREMIER CLUB BENEFIT TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>LLOYD'S UNDERWRITERS SYNDICATE NOS. 2987, 1607, 1183 and 2001,<br><br>Defendants. | No. 09 C 4004<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Evangelical Benefit Trust, BrandSource Benefit Trust, CALPASC Group Benefit Trust, Benefit Trust for CMTA, the Custom Rail Employer Welfare Trust Fund, IDA Group Benefit Trust, IEC Group Benefit Trust, Midas Dealers Employee Benefit Trust, N3A Group Benefit Trust and Premier Club Benefit Trust have sued defendants for their alleged breaches of insurance contracts. Defendants Lloyd's Underwriters Syndicate Nos. 2987, 1607, 1183 and 2001 have asserted counterclaims for equitable contribution, equitable indemnity and breach of contract. Plaintiffs now move to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the Court grants the motion.

**Facts**

Plaintiffs are multi-employer trusts created to provide health benefits for employees of the trust participants. (Am. Answer ¶ 18.) Defendants have issued certificates of insurance to each plaintiff agreeing to "reimburse [them] for Claims Incurred by [them] under the terms and provisions of the Summary Plan Description provided to employees of the participating employers of [plaintiffs]," subject to certain limitations. (*Id.* ¶ 17; *see id.*, Ex. 1, Evangelical Benefit Trust Certificate at 4 & Schedule, Item 1; *id.*, Ex. 2, BrandSource Benefit Trust Certificate at 4 & Schedule, Item 1; *id.*, Ex. 3, CALPASC Group Benefit Trust Certificate at 4 & Schedule, Item 1; *id.*, Ex. 4, Benefit Trust for CMTA Certificate at 4 & Schedule, Item 1; *id.*, Ex. 5, The Custom Rail Employer Welfare Trust Fund Certificate at 4 & Schedule, Item 1; *id.*, Ex. 6, IDA Group Benefit Trust Certificate at 4 & Schedule, Item 1; *id.*, Ex. 7, IEC Group Benefit Trust Certificate at 4 & Schedule, Item 1; *id.*, Ex. 8, Midas Dealers Employee Benefit Trust Certificate at 4 & Schedule, Item 1; *id.*, Ex. 9, N3A Group Benefit Trust Certificate at 4 & Schedule, Item 1; *id.*, Ex. 10, Premier Club Benefit Trust Certificate at 4 & Schedule, Item 1 (hereafter, "certificates").) The certificates state that defendants are liable to plaintiffs: (1) "when the Claims Paid by [plaintiffs] exceed the Retention" set forth in the schedule; (2) for "an amount of the Claims Paid by [plaintiffs] . . . in excess of the Retention" and "the amount of the Claims Incurred [during the period of insurance] that have not been paid by [plaintiffs] within 30 days after a final [claim] determination"; (3) for "Claims Incurred during the Period of Insurance which exceed the Terminal Fund," if a plaintiff or its claims administrator becomes insolvent; and (4) for "Claims Incurred during the Period of Insurance which exceed the Terminal Fund," if the insurance program is terminated or not renewed. (*See* Compl., Exs. 1-10 at 4, Limit of Liability Nos. 1, 3-5.) The certificates also make defendants

liable "to . . . covered employees" for "Claims Incurred that have not been paid in full by [plaintiffs] within 30 days of . . . final [claim] determination," and say that "[t]he Retention . . . shall not apply to such unpaid Claims Incurred." (*Id.*, Limit of Liability No. 2.) The certificates define "Retention" as $50,000.00 or $100,000.00 Claims Paid. (*Id.*, Schedule, Item 5.)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but plaintiff must make sufficient "[f]actual allegations . . . to raise [her] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Count I of defendants' counterclaim asserts claims for equitable contribution. The doctrine of equitable contribution allows an insurer that pays for an entire loss to be reimbursed by other insurers who share liability for it. *Argonaut Ins. Co. v. Safway Steel Prods., Inc.*, 822 N.E.2d 79, 87 (Ill. App. Ct. 2004). A right of equitable contribution arises when "insurance policies cover a risk on the same basis and there is an identity between the policies as to parties and insurable interests and risks." *Id.* (quotation omitted). Such is the case here, defendants say, because the certificates impose liability on them for certain claims without waiving plaintiffs' liability for the retention. Thus, defendants argue, the parties are co-insurers of these risks.

Plaintiffs say the plain language of the certificates refutes defendants' claim. The Court agrees. The first limit of liability states that defendants are liable to plaintiffs "when the Claims Paid

3

by [plaintiffs] exceed the Retention." (Compl., Exs. 1-10, Certificates at 4.) "Claims Paid" are "those amounts that are paid in respect to bills or statements that have been actually issued or prepared by the hospitals . . . or other bodies providing the treatment . . . for which the claim is made." (*Id.*, Exs. 1-10, Certificates at 5-6.) The retention specified in each certificate is $50,000.00 or $100,000.00 "Claims Paid." (*Id.*, Schedule, Item 5.) Because the first limitation imposes separate and distinct liability on the parties, it does not make the parties co-insurers of any risks.

The second limitation provides:

> Underwriters shall also be directly liable to the covered employees of the participating employers of the Program . . . for Claims Incurred that have not been paid in full by the Assured within 30 days of a final determination under the Program's claim review procedure. The Retention by the Assured specified in Item 5 of the Schedule shall not apply to such unpaid Claims Incurred.

(*Id.*, Certificates at 4.) The certificates define "Claims Incurred" as "those properly covered Program costs fro [sic] medical treatment, diagnosis or advice provided during the Period of Insurance." (*Id.* at 5-6.) Though this provision imposes additional liability on defendants, it does not change the allocation of risk between plaintiffs and defendants set forth in the first limitation. Thus, it does not make the parties co-insurers.

Nor does the third limitation, which makes defendants liable to plaintiffs for "Claims Paid . . . in excess of the Retention . . . . and the amount of the Claims Incurred [during the period of insurance] that have not been paid by the [plaintiffs] within 30 days after a final [claim] determination." (*Id.* at 4.) This limitation reiterates the risk allocation for claims paid, *i.e.*, that plaintiffs are liable for the first $50,000.00 or $100,000.00 and defendants are liable for claims paid in excess of that amount, and sets forth the allocation for certain claims incurred, *i.e.*, that defendants are liable for such claims not paid by plaintiffs within thirty days of final claim determination.

Because the retention is defined as a dollar amount of "*Claims Paid*" (*see id.*, Schedule, Item 5 (emphasis added)), it cannot apply to the claims incurred addressed by this limitation. Consequently, the third limitation does not make plaintiffs liable for equitable contribution.

The last two limitations make defendants liable for "Claims Incurred during the Period of Insurance which exceed the Terminal Fund," if a plaintiff or its claims administrator becomes insolvent or the insurance program is terminated. (*Id.* at 4.) Like the third, discussed above, these limitations impose liability for certain claims incurred, to which the retention cannot apply, to defendants. Thus, like the third, these limitations do not impose common liability on the parties for any claims.

In short, the plain language of the certificates defeats defendants' claims for equitable contribution. The Court, therefore, grants plaintiffs' motion to dismiss Count I of the counterclaim.[1]

Defendants fare no better with their Count II claims for implied contractual indemnity. (*See* Countcl. Count II (titled "Equitable Indemnity"); Defs.' Mem. Law Opp'n Mot. Dismiss Countercl. at 9-10 (asserting that Count II states claims for implied contractual indemnity).) "Under the doctrine of implied contractual indemnity, where one party's breach of contract causes a second party to breach a separate contract with a third party, the second party may shift its contractual liability to the first party." *Zielinski v. Miller*, 660 N.E.2d 1289, 1293 (Ill. App. Ct. 1995); *see Carrillo v. Jam Prods., Ltd.*, 527 N.E.2d 964, 967 (Ill. App. Ct. 1988). Defendants do not allege that plaintiffs' breach of the insurance contracts caused defendants to breach a contract with a third party. Rather, they allege that plaintiffs' breach of the insurance contracts caused defendants to breach the very

---

[1] Even if the parties were "co-insurers" of certain risks, it is not clear that defendants could assert equitable contribution claims. *See Aetna Cas. & Sur. Co. v. James J. Benes & Assocs., Inc.*, 593 N.E.2d 1087, 1093 (Ill. App. Ct. 1992) (holding that an insurer could not seek equitable contribution from a municipal risk pool).

same contracts. That may be the basis for an affirmative defense to plaintiffs' contract claims, *see Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1377 (7th Cir. 1990), but it is not the basis for an implied indemnity claim. Thus, the Court dismisses Count II of the counterclaim.

In Count III, defendants allege that plaintiffs breached the insurance contracts by failing to maintain an adequate Terminal Fund and providing inaccurate information to defendants. (*See* Countercl. ¶¶ 9-11.) The certificates define "Terminal Fund" as "current assets on hand to fund the actuarial value of all incurred but unpaid claims, (including incurred but not reported claims i.e. IBNR)." (Compl., Exs. 1-10, Certificates at 6.) They do not, however, require plaintiffs to have sufficient assets to cover incurred but unpaid claims or otherwise set the amount of money that must be in the fund. Rather, the certificates state:

> It is a condition of this coverage that the Assured shall establish and maintain a Terminal Fund within the Trust in accordance with the terms agreed by both parties. In the event the Fund at any times falls below the agreed level of the Terminal Fund required, then the contributions shall be increased effective within 60 days to correct such deficit for an additional projected actuarial period of not less than six additional months.

(*Id.* at 10.) Because defendants do not allege what the "agreed level" of the Terminal Fund was or that plaintiffs failed to maintain the fund in that amount, they have not stated a claim for breach of contract.

The same is true for the Count III claim based on plaintiffs' alleged provision of false cash flow statements to defendants. The certificates require plaintiffs to provide accurate information to defendants (*id.*), and defendants allege that plaintiffs breached the provision and they were damaged as a result. (Countercl. ¶¶ 8-11.) Defendants do not, however, allege that they performed all of their

6

obligations under the contract, which is an essential element of a viable contract claim. *See Rajkovich v. Alfred Mossner Co.*, 557 N.E.2d 496, 499-500 (Ill. App. Ct. 1990).

### Conclusion

For the reasons set forth above, the Court grants plaintiffs' motion to dismiss [doc. no. 15], dismisses Counts I and II of the counterclaim with prejudice and dismisses Count III without prejudice. Defendants have fourteen days from the date of this Order to amend Count III, if they can do so and comply with Rule 11. If they do not amend Count III in that period, the Court will dismiss it with prejudice.

**SO ORDERED.**                                                **ENTERED:**


Dated:  January 13, 2010                    **HON. RONALD A. GUZMAN**
                                            **United States District Judge**