*MHN*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EVANGELICAL BENEFIT TRUST, BRANDSOURCE BENEFIT TRUST, CALPASC GROUP BENEFIT TRUST, TRUST FOR CMTA, THE CUSTOM RAIL EMPLOYER WELFARE TRUST FUND, IDA GROUP BENEFIT TRUST, IEC GROUP BENEFIT TRUST, MIDAS DEALERS EMPLOYEE BENEFIT TRUST, N3A GROUP BENEFIT TRUST and PREMIER CLUB BENEFIT TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> LLOYD'S UNDERWRITERS SYNDICATE NOS. 2987, 1607, 1183 and 2001, <br><br> Defendants. | No. 09 C 4004 <br><br> Judge Ronald A. Guzmán |
| LLOYD'S UNDERWRITERS SYNDICATE NOS. 2987, 1607, 1183 and 2001, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> MEDICAL BENEFIT ADMINISTRATORS OF MD, INC., DAYSPRING MANAGEMENT LLC, R.J. WILSON AND ASSOCIATES, INC., TRUSTEES OF EVANGELICAL BENEFIT TRUST, et al., <br><br> Third-Party Defendants. | |

## MEMORANDUM OPINION AND ORDER

The case is before the Court on plaintiffs' Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the amended counterclaim and third-party defendants R.J. Wilson & Associates ("Wilson"), Medical Benefit Administrators of MD, Inc. ("MBA") and Trustees of Evangelical Benefit Trust, CALPASC Group Benefit Trust, Trust for CMTA, The Custom Rail Employer Welfare Trust Fund, IDA Group Benefit Trust, IEC Group Benefit Trust, Midas Dealers Employee Benefit Trust, N3A Group Benefit Trust and Premier Club Benefit Trust's ("Trustees") motions to dismiss the amended third-party complaint. For the reasons set forth below, the Court denies the motions of plaintiffs and Wilson and grants those of MBA and the Trustees.

## Facts

Plaintiffs are multi-employer trusts created to provide health benefits for employees of the trust participants. (Am. Answer ¶ 18.) Defendants issued certificates of insurance to plaintiffs through third-party defendant Wilson, which is authorized by contract to "bind insurance and issue documents evidencing insurances" on defendants' behalf. (Am. Third-Party Compl. ¶ 5; *see id.*, Ex. A, Binding Authority Agreement.) The insurance certificates require plaintiffs to maintain terminal funds in certain amounts and make defendants liable for claims incurred in excess of the terminal funds, if plaintiffs or their claims administrators become insolvent. (Am. Countercl. ¶¶ 5-9; *see* Compl., Exs. 1-10, Certificates of Insurance.) Third-party defendants Trustees are plaintiffs' plan fiduciaries. (Am. Third-Party Compl. ¶¶ 7-16.) Third-party defendants MBA and Dayspring Management LLC are plaintiffs' plan and/or claims administrators. (*Id.* ¶¶ 3-4.) MBA, Dayspring and Wilson are wholly or partially owned and wholly controlled by Ronald J. Wilson. (*Id.* ¶ 6.)

2

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Amended Counterclaim

In the sole count of their amended counterclaim, defendants allege that plaintiffs breached their contracts with defendants by failing to maintain terminal funds in specific amounts. (*See* Am. Countercl. ¶¶ 5-10.) Plaintiffs say they made no such agreement and, even if they had, their failure to abide by it would not be a material breach of the contracts. The truth of defendants' allegations and the materiality of any alleged breach, however, are fact issues that cannot be resolved on a motion to dismiss. *See Int'l Prod. Specialists, Inc. v. Schwing Am., Inc.*, 580 F.3d 587, 594 (7th Cir. 2009) ("[T]he question of whether or not a particular breach of contract is material is a question of fact."); *Hecker*, 556 F.3d at 580 ("Even after *Twombly*, courts must still approach motions under Rule 12(b)(6) by constru[ing] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." (quotation omitted)).

Alternatively, plaintiffs argue that the contract interpretation underlying this claim renders illusory defendants' promise to be liable for claims if plaintiffs become insolvent. (*See* Compl., Exs. 1-10, Limit of Liability 4 & 5.) If the contracts require them to maintain terminal funds equal to

3

incurred claims, plaintiffs say, then a condition precedent to defendants' liability – that incurred claims exceed the terminal funds – will never occur.

The Court disagrees. A promise is illusory if it is conditioned on an event that cannot occur. *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 499 N.E.2d 1319, 1323 (Ill. 1986). If, however, a promise is conditioned on an event that might occur, even if "the probability that [it] will occur is very slight," the promise is not illusory. *Id.* (quotation omitted). Even if the contracts required them to do so, as defendants allege, it was possible that plaintiffs would not maintain terminal funds equal to incurred claims, thereby exposing defendants to insolvency liability. Because defendants' contract claim does not necessarily vitiate its insolvency liability, the purported tension between the two is not a basis for dismissing the claim.

## Amended Third-Party Complaint

In Count I, defendants allege that Wilson breached its contract with them by: (1) withholding information from them or giving them inaccurate information; (2) failing to ensure that plaintiffs established adequate contribution rates for claims and approving benefit levels that could not be supported by the rates that were established; and (3) failing to ensure that the Trusts maintained terminal funds as set forth in the insurance contracts. (Am. Third-Party Compl. ¶ 35.) Though the contract does not explicitly require Wilson to refrain from such conduct, it is reasonable to infer that such an obligation attends its duty to administer the insurance contracts, which is stated in the contract. (*Id.* ¶ 34; *see id.*, Ex. A, Binding Authority Agreement § 4.3.) Thus, the fact that those terms are not specifically expressed is not a basis for dismissing the claim.

Alternatively, Wilson argues that defendants have not adequately alleged that its purported breaches are causally connected to the source of defendants' harm – the Trusts' insolvencies. (*See* Am. Third-Party Compl. ¶¶ 26-27.) Again, the Court disagrees. Defendants' allegation that Wilson and other third-party defendants depleted the Trusts' assets by approving almost $1 million in uncovered claims sufficiently connects Wilson's alleged breaches to defendants' alleged harm. (*Id.* ¶ 28.)

Next, Wilson argues that Counts II and III, which charge it with intentional and negligent misrepresentation, are actually impermissible claims for indemnification. *See Schulson v. D'Ancona & Pflaum, LLC*, 821 N.E.2d 643, 648 (Ill. App. Ct. 2004) ("[A] stranger to a contract between two parties cannot be held liable to indemnify one of the parties for breach . . . absent an express agreement to indemnify."). The Court disagrees. Indemnity is a mechanism for shifting liability – in this case, for defendants' alleged breach of the insurance contracts – from a nominally responsible party to one that is primarily responsible. *United Gen. Title Ins. Co. v. AmeriTitle, Inc.*, 847 N.E.2d 848, 854 (Ill. App. Ct. 2006), *overruled on other grounds, Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583, 591 (Ill. 2008). Defendants allege that Wilson's misrepresentations caused them to enter into, not breach, the insurance contracts with plaintiffs. (*See* Am. Third-Party Compl. ¶¶ 55, 58.) Thus, Counts II and III are not indemnity claims.

Alternatively, Wilson argues that the negligent misrepresentation claim is inadequately pled. To state a viable claim, defendants must allege that: (1) Wilson had a duty to provide accurate information to defendants, which it breached by making a false statement of material fact; (2) Wilson made the false statement to induce defendants to act; and (3) defendants acted in reliance on the statement's truth and were damaged as a result. *Quinn v. McGraw-Hill Cos., Inc.*, 168 F.3d 331, 335

(7th Cir. 1999). Wilson argues that the duty element is lacking because the parties' contract does not require it to provide accurate information to defendants. As noted above however, it is reasonable to infer that Wilson's responsibility for administering the insurance contracts includes a duty to give defendants accurate information. The Court, therefore, rejects this challenge.

In Count IV, defendants allege that Wilson should be estopped from denying that it agreed to bind insurance for plaintiffs only if they maintained appropriate terminal funds. Wilson argues, in essence, that the alleged promise is incredible because it would render illusory defendants' insolvency liability to plaintiffs. As discussed above, the Court rejects the illusory-promise argument and cannot otherwise address credibility arguments on a motion to dismiss. *Hecker*, 556 F.3d at 580.

Wilson argues that the Count V claim for equitable indemnity should be dismissed because defendants impermissibly seek to hold it liable for the acts and omissions of MBA and Dayspring. Defendants allege, however, that MBA, Dayspring and Wilson are all owned and operated by Ronald Wilson and "are so closely intermingled and related as to be considered alter egos." (Am Third-Party Compl. ¶ 6.) Those allegations are sufficient to state vicarious liability claims against Wilson for MBA and Dayspring's alleged conduct. *See Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985) (stating that the corporate veil may be pierced if there is a "such a unity of interest and ownership that the separate personalities of the corporation[s] . . . no longer exist" and "adher[ing] to the fiction of separate corporate existence would sanction a fraud or promote injustice" (quotation omitted)).

In Counts VI-IX, defendants assert contractual and equitable subrogation claims against MBA, Dayspring and the Trustees, none of which is viable. MBA and Dayspring are plaintiffs' plan and/or claims administrators and the Trustees are plaintiffs' plan fiduciaries. (Am. Third-Party

Compl. ¶¶ 3-4, 7-16.) They are not insurers, and thus, do not insure the same risks as defendants or have primary liability for any loss insured by defendants, as required for equitable subrogation. *See Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 280 (Ill. 2004). Moreover, though there is a subrogation clause in the insurance contracts, it cannot be read as creating subrogation rights against plan or claims administrators or plan fiduciaries as required for contractual subrogation. Counts VI-IX are, therefore, dismissed.[1]

### Conclusion

For the reasons set forth above, the Court denies plaintiffs' motion to dismiss the amended counterclaim and Wilson's motion to dismiss the amended third-party complaint [doc. nos. 64 & 70], grants MBA and the Trustees' motions to dismiss the amended third-party complaint [doc. nos. 62 & 174] and dismisses with prejudice Counts VI-IX of the amended third-party complaint.

**SO ORDERED.**   ENTERED: 7/19/2010

HON. RONALD A. GUZMAN
**United States District Judge**

---

[1] Because the claims asserted against the Trustees are plainly not viable, the Court need not address their motion to dismiss for lack of personal jurisdiction. *See* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.6 (stating that a court can "resolv[e] the suit on the merits when they clearly must be decided in favor of the party challenging [personal] jurisdiction, thereby obviating any need to decide the question").